IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GAIL CORDER FISCHER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:20-CV-2173-K |
| | § | |
| CLIFFORD FISCHER and JUDD, | § | |
| THOMAS, SMITH, & COMPANY, P.C., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are: (1) Defendant Judd, Thomas, Smith, & Company, P.C.'s Motion to Dismiss Under Federal Rule 12(b)(1) ("Doc. No. 9); and (2) Defendant Clifford Fischer's Motion for Order Granting Dismissal for Lack of Subject Matter Jurisdiction (Doc. No. 10) (collectively, the "Motions"). The Court has carefully considered the briefing on the Motions, the responses, the replies, the applicable law, and the relevant portions of the record. Because the Court finds it is without subject matter jurisdiction, the Court **GRANTS** both Motions and dismisses this case without prejudice. Additionally, the Court **DENIES** Plaintiff leave to amend her complaint.

## I. Factual and Procedural Background

Plaintiff Gail Corder Fischer ("Plaintiff") and Defendant Clifford Fischer ("Defendant C. Fischer") were married and built Clifford Fischer & Company (the

"Company") into a successful business. 1st Am. Compl. (Doc. No. 8) at 1, ¶1. The Company "provides consulting, brokerage, and technology solutions to corporate real estate users looking for a conflict-free broker for their real estate needs." *Id.* at 3, ¶9. Plaintiff and Defendant C. Fischer separated in July 2017 and, on August 16, 2019, their divorce was finalized. *Id.* at 3-4, ¶¶12-13. In the Final Decree of Divorce, the judge awarded Plaintiff, as her separate property, 50% of the stock in the Company, "including one-half of all rights and privileges, past, present, or future, arising out of or in connection with the operation of the business." *Id.* at 4, ¶13. Defendant C. Fischer owns the other 50% of the Company's stock. *Id.* at 3, ¶10. Defendant C. Fischer is Chairman of the Board of Directors and Chief Executive Officer of the Company. *Id.* Plaintiff is the Executive Vice Chairman of the Board of Directors and a broker for the Company. *Id.* at ¶11.

Plaintiff alleges that Defendant C. Fischer directed the Company to elect S Corporation status pursuant to the Internal Revenue Code (the "IRC"). *Id.* at 4, ¶14. As an S Corporation, the Company is permitted to have one class of stock and is treated as having only one class of stock if all outstanding shares of the Company's stock "confer identical rights to distribution and liquidation proceeds." *Id.* at ¶15. Based on the IRC and relevant federal regulations, Plaintiff alleges that she must receive an identical distribution from the Company to that which Defendant C. Fischer receives.

*Id.* at ¶16. Plaintiff alleges that, instead, she is receiving "substantially less monies", which violates S Corporation regulations. *Id.* at 4-5, ¶17. Plaintiff alleges that from February 2020 through June 2020, she did not receive any distributions from the Company whereas Defendant C. Fischer received at least $2.9 million, in addition to "at least $900,000 in purported commissions." *Id.* at 5, ¶¶18-20.

Defendant Judd, Thomas, Smith, & Company, P.C. ("Defendant Judd") is the accounting, tax, and financial advisor for the Company. *Id.* at 5-6, ¶21. In November 2019, Defendant Judd informed Plaintiff that it would continue to advise the Company and Defendant C. Fischer, but it would no longer advise Plaintiff because a "conflict of interest" existed. *Id.* at ¶¶21, 24. Defendant Judd knows the Company elected to be treated as an S Corporation and, Plaintiff alleges, was actually "instrumental in advising [Defendant C.] Fischer, CEO of the Company, to make that election" because of the related tax benefits. *Id.* at 6, ¶22. Plaintiff also alleges that Defendant Judd "is aware" of the distributions the Company is making at Defendant C. Fischer's direction and that these "unidentical distributions" violate the IRC and related federal regulations; yet, Defendant Judd has done nothing to advise against or stop these unequal distributions. *Id.*

Additionally, Plaintiff alleges that Defendant Judd's conflict of interest actually arose by May 2018, if not earlier, when Plaintiff filed for divorce. *Id.* at ¶24. Defendant

Judd simply "ignored" the alleged conflict prior to November 2019, which violated the rules of professional conduct, and continued to advise Plaintiff, Defendant C. Fischer, and the Company to Plaintiff's detriment. *Id.* This advice included changing the payment of Plaintiff's and Defendant C. Fischer's 2018 year-end bonuses of approximately $5 million from W-2 wages to S Corporation distributions and also making a $4 million payment to the IRS in January 2019 that was "well in excess of any tax liability", resulting in a $1.4 million refund. *Id.*

Plaintiff filed suit against Defendant C. Fischer and Defendant Judd in this Court alleging that this Court's subject matter jurisdiction arises under federal question. *Id.* at 2-3, ¶6. In her First Amended Complaint (the "Complaint"), Plaintiff asserts the following state common law and statutory claims: fraud and negligent misrepresentation against Defendant C. Fischer; conspiracy against Defendant C. Fischer and Defendant Judd; and "accounting malpractice/negligence" against Defendant Judd. Both Defendants filed their respective motion to dismiss for lack of subject matter jurisdiction and both motions are fully briefed.

## II.  Legal Standards

### A.  Federal Rule of Civil Procedure 12(b)(1)

A party may challenge the court's subject matter jurisdiction to hear a case by filing a motion pursuant to Federal Rule of Civil Procedure 12(b)(1). Fed. R. Civ. P.

12(b)(1). The court may dismiss for lack of subject matter jurisdiction on any one of the following: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981); *accord Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A motion under Rule 12(b)(1) may challenge the court's subject matter jurisdiction based on the face of the complaint. *Williamson*, 645 F.2d at 412. "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953 (1980).

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)); *see also Ramming*, 281 F.3d at 161 (court should grant a motion to dismiss for lack of subject matter jurisdiction "only if it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim that would entitle plaintiff to relief."). The party asserting federal jurisdiction bears the burden of proof on a Rule 12(b)(1) motion. *Ramming*, 281 F.3d at 161.

## B.     Federal Question Jurisdiction

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotations omitted); *accord Settlement Funding, L.L.C. v. Rapid Settlements, Ltd.*, 851 F.3d 530, 537 (5th Cir. 2017).  Federal courts are vested with subject matter jurisdiction over all civil actions "arising under the Constitution, laws, or treaties of the United States," or where the case in controversy exceeds $75,000 and is between citizens of different states, or between citizens of a state and citizens or subjects of a foreign state.  28 U.S.C. §§ 1331, 1332(a)(1)-(2).  "[D]eterminations about federal jurisdiction require sensitive judgments about congressional intent, judicial power, and the federal system." *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 810 (1986).  Furthermore, the Supreme Court has "forcefully reiterated" the "need for prudence and restraint in the jurisdictional inquiry[.]" *Id.*

A court looks to the "well-pleaded complaint" in determining whether a claim "arises under" federal law.  *Id.* at 808.  A case may be brought in federal court, originally or by removal from state court, under federal question jurisdiction where "a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S.

1, 27-28 (1983); *see also Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) (Supreme Court has long recognized a less common "arising under" jurisdiction in cases involving "state-law claims that implicate significant federal issues.").

However, federal question jurisdiction is limited. *Merrell Dow Pharms*, 478 U.S. at 807. There is a "long-settled understanding that the mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." *Id.* at 813. "It has in fact become a constant refrain . . . that federal jurisdiction demands not only a contested federal issue, but a substantial one, indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons*, 545 U.S. at 313. Rather than fashioning a "'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims between non-diverse parties," the Supreme Court formulated the following question based on its prior cases: "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314; *accord Gunn v. Minton*, 568 U.S. 251, 258 (2013) ("[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal

court without disrupting the federal-state balance approved by Congress."); *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008).

## III.  Analysis

It is undisputed that diversity jurisdiction does not exist in this case.  What is at issue is whether the Court has federal question jurisdiction pursuant to Plaintiff's Complaint.  As both Defendant C. Fischer and Defendant Judd filed separate Motions to Dismiss, the Court will take each in turn.

### A.  Defendant C. Fischer's Motion

In his Motion, Defendant C. Fischer argues that this case must be dismissed for lack of subject matter jurisdiction because: (1) Plaintiff's Complaint does not allege a claim under federal law nor federal common law; (2) Plaintiff's state law claims do not "arise under" federal law because there is no vindication of any right under state law that necessarily hinges on some construction of federal law; and (3) Plaintiff's state law claims are not completely pre-empted by any federal statute such that federal court is the exclusive jurisdiction.  Mot. Br. (Doc. No. 11) at 17, 21, & 25.  Plaintiff does not dispute that she asserts state law claims.  In her Response, Plaintiff argues that federal jurisdiction nevertheless exists because the underlying requirements of a state law claim she asserts is created by federal law and the determination of this case "ultimately rests on an interpretation of federal tax law."  Resp. (Doc. No. 18) at 9 & 10.  Plaintiff also

contends that the Court will not "upset the balance of federal and state responsibilities" by exercising jurisdiction over this matter "because the United States has a direct interest in the availability of a federal forum to uniformly adjudicate federal taxes." *Id.* at 15. Defendant C. Fischer responds that Plaintiff's claims do not require the interpretation or application of federal law and no federal law is disputed, so federal question jurisdiction does not exist, and the case must be dismissed. Reply (Doc. No. 23) at 5-6.

### 1. Federal Question Jurisdiction Where State Law Claims Implicate Significant Federal Law

The Court looks to whether Plaintiff's "well-pleaded complaint establishes . . . that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27-28. The presence of a federal issue does not operate "as a password opening federal courts to any state action embracing a point of federal law." *Grable & Sons*, 545 U.S. at 314. Indeed, the Supreme Court has "sh[ied] away from the expansive view that mere need to apply federal law in a state-law claim will suffice to open the 'arising under' door." *Id.* at 313. Only where "a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities" will federal question jurisdiction lie. *Id.* at 314; *accord Gunn*, 568 U.S. at 258; *Singh*, 538

F.3d at 338.  As the party asserting federal jurisdiction, Plaintiff bears the burden of proof on a Rule 12(b)(1) motion.  *Ramming*, 281 F.3d at 161.

### a.    Federal Issue Necessarily Raised, Actually Disputed, and Substantial

Plaintiff asserts claims for fraud and negligent misrepresentation against Defendant C. Fischer alleging that he falsely "represented to [Plaintiff] (and the IRS) that the Company had elected S Corporation status and the Company, at his direction, would comply with the requirements of a [sic] S Corporation," which includes Plaintiff receiving identical distributions to those Defendant C. Fischer receives.  1st Am. Compl. at 8, ¶¶28, 33.  Plaintiff also asserts a claim for conspiracy against Defendant C. Fischer and Defendant Judd, alleging that both Defendants conspired to "represent to [Plaintiff] (and the IRS) that the Company had elected to be treated as a [sic] S Corporation under the IRS regulations and would comply with the requirements of a [sic] S Corporation," but knowing that Plaintiff, who is an equal 50% shareholder to Defendant C. Fischer, did not receive identical distributions.  *Id.* at 10, ¶37.  In asserting these state claims, Plaintiff references federal tax law, including federal regulations and the Internal Revenue Code, as relating to the S Corporation requirements.

It is well-settled "that the mere presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction."  *Merrell Dow*

*Pharms.*, 478 U.S. at 813. "Ultimately, whether a federal issue embedded in the matrix of a state law claim will support federal question jurisdiction entails a pragmatic assessment of the nature of the federal interest at stake[.]" *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917 (5th Cir. 2001). The Court finds that Plaintiff fails to identify a disputed and substantial federal issue and, therefore, has failed to establish federal question jurisdiction.

In her Complaint, Plaintiff cites federal law with respect to certain requirements and regulations regarding S Corporations in asserting her state claims against Defendant C. Fischer. *See* 1st Am. Compl. at 4, ¶¶14-15; 7, ¶27. "It is well established that references to federal rules and regulations in complaints alleging state law causes of action, even if they constitute an element of the plaintiff's claim, may not suffice to render the action arising under federal law." *Williams v. EDCare Mgmt., Inc.*, Civ. Action No. 1:08-CV-278, 2008 WL 4755744, at *6 (E.D. Tex. Oct. 28, 2008); *see Grable & Sons*, 545 U.S. at 313 ("[T]he mere need to apply federal law in a state-law claim will [not] suffice to open the 'arising under' door."). Although Plaintiff contends that the Court will need to interpret federal tax law, Plaintiff fails to actually establish this. Plaintiff does not call into question or challenge the federal government's application of any tax law. *Compare Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 201 (1921) ("[T]he controversy concerns the constitutional validity of an act of Congress

[in organizing the banks and authorizing the issuance of bonds] which is directly drawn into question. The decision depends upon the determination of this issue.") *and Grable & Sons*, 545 U.S. at 315 (exercise of federal jurisdiction appropriate where administrative action of IRS called into question and interpretation and meaning of federal statute was only issue in dispute) *and Hughes v. Chevron Phillips Chem. Co.*, 478 F. App'x 167, 170-71 (5th Cir. 2012) (federal jurisdiction appropriately lies in case where validity of defendant's actions turned on whether IRS issued a valid administrative levy on plaintiff's wages which required determination of whether IRS had authority to do so and whether it followed proper procedures in doing so), *with Empire Healthchoice Assur.*, 547 U.S. at 700 ("Here, the reimbursement claim was triggered, not by the action of any federal department, agency, or service, but by the settlement of a personal-injury action launched in state court and the bottom-line practical issue is the share of that settlement properly payable to Empire."). Plaintiff's state claims essentially turn on whether Defendant C. Fischer lied to Plaintiff; they do not require the interpretation of any tax law nor do they involve the federal government's application of any tax law. That the alleged false representations may have reference to a federal statute, regulation, or code does not "suffice to open the 'arising under' door." *See Grable & Sons*, 545 U.S. at 313.

Plaintiff is correct in stating that "*Grable* best explains how a federal question inside a state-law claim necessitates a federal forum." Resp. at 9. Plaintiff's characterization of the Supreme Court's holding, however, is not completely accurate. Plaintiff fails to acknowledge that, in *Grable*, the meaning of the federal tax statute was not simply an "essential" element to the claim, it was the only issue in dispute, and one that arose from an administrative action of the IRS and the interpretation of the meaning of this statute could impact its ability to collect delinquent taxes. *Grable & Sons*, 545 U.S. at 315. This case is in no way analogous to *Grable* and, in fact, confirms that federal jurisdiction does not lie in this case. Plaintiff has not demonstrated, in either her Complaint or Response, that the *meaning* of any federal statute or regulation is in dispute, let alone that it is the only legal or factual issue contested. Neither does this case involve the action or application of any federal tax law by the federal government.

Plaintiff also argues that the case, *Bd. of Comm'rs of Se. La. Flood Protection Auth. v. Tenn. Gas Pipeline Co., L.L.C.*, 850 F.3d 714 (5th Cir. 2017), is controlling. She contends that the Fifth Circuit held federal question jurisdiction existed because, generally, two of the plaintiff's state claims "could not be resolved without a determination as to whether multiple federal statutes had been violated" which necessitated interpretation of those statutes. Resp. at 10. Plaintiff asserts that *Tenn.*

*Gas Pipeline* requires the Court to find federal question jurisdiction exists because her claims "ultimately rest[] on an interpretation of federal tax law." *Id.* That case, however, is easily distinguishable from this case because the issue there was whether the defendants had breached duties created by federal law and, more importantly, whether federal law actually created those duties thereby implicating a federal regulatory scheme. *Tenn. Gas Pipeline*, 850 F.3d at 724. This case does not involve a dispute of that kind. Despite Plaintiff's passing statement that "the disparity is an irredeemable breach of [a] Treasury Regulation," Plaintiff fails to demonstrate that federal law provides the basis for any duty under which Defendant C. Fischer would be liable for these state claims. *See id.* at 723. Indeed, Plaintiff alleges in her Complaint that Defendant C. Fischer breached his duty arising from his and Plaintiff's equal ownership of the Company, which a result of their divorce decree, which is purely state law. 1st Am. Compl. at 9, ¶34.

The Court finds *Snook v. Deutsche Bank AG*, 410 F.Supp.2d 519 (S.D. Tex. 2006) more akin to this case. In *Snook*, the plaintiffs sued the defendants in state court, asserting state law claims for giving "improper and incorrect tax and legal advice and fail[ing] to disclose material information to them regarding the legality of the Strategy" which caused the plaintiffs damages. *Id.* at 521. The defendants removed the case to federal court on the basis of federal question jurisdiction. *Id.* The defendants argued

that "substantial disputed issues of federal tax law are necessary elements of Plaintiffs' claims, that the success of Plaintiffs' claims is dependent upon a determination that the Strategy violated federal tax law and necessarily turn on the interpretation of the federal tax code, and that federal subject matter jurisdiction over the tax issues in the case is therefore mandated by the Supreme Court's recent decision in *Grable*." *Id.* The court rejected those arguments and concluded that the *Snook* case was "quite different" from *Grable*. *Id.* at 523. The *Snook* plaintiffs did not challenge or dispute the federal tax law itself or its application by the federal government; rather, the plaintiffs challenged the defendants' interpretation of and advice under that law. *Id.* So, the validity of the tax strategy pursuant to federal law was "only one facet of" the plaintiffs' claims in *Snook* whereas in *Grable*, the meaning of the federal statute was not only disputed, but it was "'the *only legal or factual issue contested in the case.*'" *Id.* Likewise, in this case, Plaintiff does not challenge or dispute any federal tax law or any application of federal tax law by the federal government. *See id.* Plaintiff complains that Defendant C. Fischer falsely represented and conspired to falsely represent that the Company elected S Corporation status and also that the Company would comply with S Corporation requirements. 1st Am. Compl. at 8, ¶¶28, 33; 10, ¶37. As in *Snook*, whether distributions made by the Company, even at Defendant C. Fischer's direction, did not comply with S Corporation regulations is, at most, "only one facet" of Plaintiff's

claims. *See id.* The Court finds that Plaintiff's state claims do not raise an actual federal issue that is disputed. *See, e.g., Franchise Tax Bd.*, 463 U.S. at 9 (federal jurisdiction was lacking where federal law was not in dispute even though the main issue turned on the meaning of the Employee Retirement Security Act of 1974, 29 U.S.C. § 1001 *et seq.*).

Even if a disputed federal issue had been raised, it would nevertheless fail on the substantiality analysis. "The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. This case is a perfect example of one that is "fact-bound and situation specific" which is insufficient to confer federal jurisdiction. *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006). Plaintiff does not establish that any of her claims require the resolution of a federal issue "which would establish a rule applicable to numerous . . . cases." *Id.* at 681, 700. This is a very situation-specific case involving ex-spouses, each holding 50% of the shares in their Company pursuant to their divorce decree, in a fact-bound dispute over false representations allegedly made by one to the other regarding distributions made by their Company.

The issues in this case are, no doubt, of great importance to these parties and the Court does not wish to minimize that in any way. But "it is not enough that the federal issue be significant to the particular parties in the immediate suit; that will *always* be true when the state claim 'necessarily raises' a disputed federal issue, as *Grable*

separately requires." *Gunn*, 568 U.S. at 260. Plaintiff fails to establish any disputed federal issue that is of importance to the entire federal system such that it is substantial. *See id.* at 262 ("The present case is 'poles apart from *Grable*,' in which a state court's resolution of the federal question 'would be controlling in numerous other cases.'").

Plaintiff's allegations and the claims asserted may require, at most, the application of federal tax law but not the construction, interpretation, or resolution of it. And there is no reason to believe a state court is incapable of applying federal law. *See Empire Health Choice Assur.*, 547 U.S. at 681 ("The state court . . . is competent to apply federal law, to the extent it is relevant," and would be in best position to determine the state claims asserted.); *see also Gunn*, 568 U.S. at 263 (Supreme Court rejected notion that "the federal courts' greater familiarity" with patent law means that state claims belong in federal court). Moreover, "the possibility that a state court will incorrectly resolve a state claim is not, by itself, enough to trigger the federal courts' . . . jurisdiction, even if the potential error finds its root in a misunderstanding of federal law." *Id.* Again, even if the determination of Plaintiff's claims ultimately requires a court to find whether Defendant C. Fischer failed to comply with federal tax law, this alone does create federal question jurisdiction. *See, e.g., Fleming v. Fleming*, Civ. Action No. 05-6847, 2006 WL 8460321, at *2 (E.D. La. Mar. 3, 2006) (federal question jurisdiction did not lie in case with state claims arising out of misstatements made in

federal tax returns because "while considering issues of breach of fiduciary duty may reach issues of materiality and whether Defendants' alleged misstatements violate and I.R.S. rules or regulations that would be informed by federal law, they 'would not be sufficiently determinative as to present . . . substantial issues.'"); *see also, e.g., Delco, Inc. v. Corporate Management, Inc.*, Civ. Action No. 2:11-CV-90-KS-MTP, 2012 WL 3154969, at *5 (S.D. Miss. Aug. 2, 2012) (although the case involved a "contested federal issue" regarding Medicare, it was not a substantial one because "[a]t its heart" the case "was truly a tort case" even though it would "certainly require a cursory understanding of Medicare regulations and procedures, and the parties dispute certain points of federal law.").

"[S]omething more, demonstrating that the question is significant to the federal system as a whole, is needed." *Gunn*, 568 U.S. at 264. Plaintiff failed to establish that "something more" is present in this case; therefore, any disputed federal issue that may arguably exist does not satisfy the substantiality requirement. *See Merrell Dow Pharms.*, 478 U.S. at 814; *see also Mikulski v. Centerior Energy Corp.*, 436 F.3d 666, 676 (6th Cir. 2006) (federal question jurisdiction did not exist even though tax law was referenced in the amended complaint because any analysis or interpretation of that law would be "insubstantial" as "the true issue in this case are breach of contract and fraudulent misrepresentation with damages measured in the amount of federal and state income

taxes overpaid by the plaintiffs because of the allegedly false information provided to them.").

Looking to Plaintiff's "well-pleaded complaint", she fails to allege a "right to relief [that] necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd.*, 463 U.S. at 27-28; *see Grable & Sons*, 545 U.S. at 314. Plaintiff failed to demonstrate that her state claims raise a contested and substantial issue with respect to any federal tax law, rules, or regulations such that jurisdiction lies in this Court. *See Grable & Sons*, 545 U.S. at 314. Therefore, Plaintiff has failed to meet her burden with respect to Defendant C. Fischer's Motion. *See Ramming*, 281 F.3d at 161 (party asserting federal jurisdiction bears burden of proof on a Rule 12(b)(1) motion).

### b.    Federal-State Balance of Judicial Responsibilities

"But even where the state action discloses a contested and substantial federal question, the exercise of federal jurisdiction is subject to a possible veto. For the federal issue will ultimately qualify for a federal forum only if federal jurisdiction is consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313-14. Even if Plaintiff had shown a contested and substantial federal issue embedded within her state claims, she fails on this consideration.

In this case, "the implications of federal jurisdiction in this type of case are much broader than in *Grable*." *Snook*, 410 F.Supp.2d at 523 (internal citation omitted). Just as in *Snook*, the Court concludes "'there is a potential for a shift in the division of labor among the state and federal courts if this Court were to [find federal jurisdiction exists] because this case is really 'no different from hundreds of state malpractice, negligence and breach of fiduciary duty cases filed in state court each year.'" *Id.* (quoting *Acker v. AIG Int'l, Inc.*, 398 F.Supp.2d 1239, 1243 n.2 (S.D. Fla. 2005)). Allowing Plaintiff "to litigate this case in federal court would open the federal courts to garden variety malpractice, breach of duty, and similar state law claim[s]" based on allegations that the defendant made fraudulent and negligent misrepresentations related to tax law. *Id.*; *see Merrell Dow*, 478 U.S. at 811-12.

Plaintiff argues in her Response that the "United States has an interest in uniform application of its taxes." Resp. at 15. The Court has already determined that there is no need to interpret or otherwise resolve the meaning of any federal tax law, and most certainly nothing that may arguably impact the federal government. Moreover, this case does not involve any administrative action or application of tax law by the federal government. Therefore, the Court finds this argument without merit.

Plaintiff further argues that a state court cannot "make a determination as what it acceptable under the S-Corporation rules . . . . because in doing so it would create

state precedent for S-Corporations in Texas that would not be applied to S-Corporations nationally." *Id.* This argument likewise is without merit. "[S]tate courts can be expected to hew closely to the pertinent federal precedents." *Gunn*, 568 U.S. at 262. There is no reason for this Court to believe, and Plaintiff submitted none, that any Texas state court would fail to follow federal court precedent related to the specific rules and regulations that may arguably be applicable. *See also Tafflin v. Levitt*, 493 U.S. 455, 465 (1990) ("State courts adjudicating civil RICO claims will, in addition, be guided by federal court interpretations of the relevant federal criminal statutes, just as federal courts sitting in diversity are guided by state court interpretations of state law."). As the Court already stated, there is no reason to believe a state court is incapable of applying federal law. *See Empire Health Choice Assur.*, 547 U.S. at 681 ("The state court . . . is competent to apply federal law, to the extent it is relevant[.]"). Moreover, federal courts are not bound by a state court interpretation of these the tax rules and regulations. *See also id.* ("[F]ederal courts, pursuant to [28 U.S.C.] §3231, would retain full authority and responsibility for the interpretation and application of federal criminal law, for they would not be bound by state court interpretations of the federal offenses constituting RICO's predicate acts."). Finally, "the possibility that a state court will incorrectly resolve a state claim is not, by itself enough to trigger the federal courts' . . . jurisdiction, even if the potential error finds its root in a

misunderstanding of [federal] law." *Gunn*, 568 U.S. at 264. Were Plaintiff to have successfully demonstrated a disputed and substantial federal issue within her state claims, the Court would nevertheless "veto" the exercise of federal jurisdiction because it would not be "consistent with congressional judgment about the sound division of labor between state and federal courts governing the application of § 1331." *Grable*, 545 U.S. at 313-14.

## 2.    Conclusion

The Supreme Court continues to recognize the emphasis in *Grable* "that it takes more than a federal element 'to open the "arising under" door.'" *Empire Healthchoice Assur.*, 547 U.S. at 701; *see also Gunn*, 568 U.S. at 260-61. Despite Plaintiff's arguments to the contrary, "[t]his case cannot be squeezed into the slim category *Grable* exemplifies." *Empire Healthchoice Assur.*, 547 U.S. at 701. Plaintiff failed to show that her state claims raise a disputed and substantial federal issue which this Court could "entertain without disturbing the balance of state and federal judicial responsibilities." *Grable & Sons*, 545 U.S. at 314. Because Plaintiff did not satisfy her burden of establishing this Court's subject matter jurisdiction, Defendant C. Fischer's Motion must be granted and Plaintiff's claims against Defendant C. Fischer are dismissed without prejudice.

## B.     Defendant Judd's Motion

Defendant Judd also moves to dismiss for lack of subject matter jurisdiction, making the same arguments as Defendant C. Fischer that there is no disputed federal issue and federal jurisdiction would offend the sound division of labor between the state and federal courts.    Likewise, Plaintiff responds with essentially the same arguments she put forth in her Response to Defendant C. Fischer's Motion.

Plaintiff asserts two claims against Defendant Judd—the conspiracy claim (also against Defendant C. Fischer) and a claim for "accounting malpractice/negligence". The Court already dismissed the conspiracy claim as to Defendant C. Fischer; those same reasons equally apply to the claim as asserted against Defendant Judd.  With respect to the accounting malpractice and negligence claim, Plaintiff fails to show that it implicates significant federal law.  As it is alleged in the Complaint, this state claim appears entirely based in state law with reference to the Texas Administrative Code and the professional duty Defendant Judd allegedly breached.   In her Response, Plaintiff puts forth the same arguments she made in Response to Defendant C. Fischer's Motion, focusing on the need for the interpretation of federal tax laws, and does not address this specific claim.  The Court's foregoing analysis regarding the complete absence of a contested and substantial federal issue applies with equal force to Defendant Judd's Motion.   Even so, this claim would undoubtedly fail on

consideration of "the appropriate 'balance of federal and state judicial responsibilities.'" *See Gunn*, 568 U.S. at 264 (recognizing the balance between the state and federal judiciary responsibilities would be upset because "[t]he States, on the other hand, have a 'special responsibility for maintaining standards among members of the licensed professions.'").

Because Plaintiff did not satisfy her burden of establishing this Court's subject matter jurisdiction, the Court finds Defendant Judd's Motion must be granted. Plaintiff's claims against Defendant Judd are dismissed without prejudice for lack of subject matter jurisdiction.

### C.     Plaintiff's Request for Leave to Amend

In her Response to both Motions, Plaintiff requests for leave to amend her Complaint in a single sentence—"If the Court is inclined to grant Defendant's Rule 12(b)(1) motion, Plaintiff requests leave to amend her complaint to replead her allegations against Defendant." Resp. (Doc. No. 18) at 16; Resp. (Doc. No. 16) at 15. Defendant C. Fischer and Defendant Judd each oppose such relief, responding that Plaintiff failed to follow Local Rule 15.1(b) requirements and also that the pleading defects are incurable.

When a party cannot amend a pleading as a matter of course, the party may amend a pleading only "with the opposing party's written consent or the court's leave."

FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* However, "leave to amend under Rule 15 is by no means automatic." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 254 (5th Cir. 2003). Although Rule 15(a) favors granting leave to amend, the decision whether to grant or deny leave to amend a pleading is a matter within the district court's discretion. *See Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590–91 (5th Cir. 2016). It is well established that a party seeking to amend a pleading under Rule 15(a) need not always file a formal motion; but the party must "give the court some notice of the nature of his or her proposed amendments" and support the request for leave to amend with "*some* specificity" which is required. *Id.* at 590; *accord Willard*, 336 F.3d at 387 ("A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought."). A plaintiff that simply "tack[s] on a general curative amendment request" in response to a motion to dismiss does not provide a sufficient basis for why the court should grant leave. *Goldstein*, 340 F.3d at 254. "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* FED. R. CIV. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Willard*, 336 F.3d at 387 (internal quotation omitted).

Plaintiff's single sentence request for leave is the epitome of "a general curative amendment request." *See Goldstein*, 340 F.3d at 254. Plaintiff provides no explanation for how she might cure any of the jurisdictional deficiencies raised by both Defendants. A party may amend its pleading once as a matter of course "any time before a responsive pleading is served." FED. R. CIV. P. 15(a). A motion to dismiss under Rule 12 is not a responsive pleading, therefore "the filing of such a motion does not extinguish a party's right to amend as a matter of course." *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002). Plaintiff did not amend her Complaint as a matter of course even after Defendants filed their respective motions to dismiss asserting lack of subject matter jurisdiction.

The Fifth Circuit has "not provided strict guidelines as to what constitutes a sufficient request for leave to amend," but has stated that "it is clear that *some* specificity is required." *Thomas*, 832 F.3d at 590. The Fifth Circuit has previously held that a district court did not abuse its discretion in denying the plaintiff leave to amend where, as here, the plaintiff: (1) did not amend her complaint as a matter of right, (2) submitted a general curative request to amend her complaint in their response to the motion to dismiss, (3) did not submit a proposed amended complaint to the court, and (4) failed to provide "some specificity" to the court and defendant of the substance of her proposed amendment. *McKinney*, 309 F.3d at 315. For all those same reasons, the

Court, in its discretion, denies Plaintiff's request to amend her Complaint. *Id.*; *see also Goldstein*, 340 F.3d at 254-55 (affirming denial of motion for leave to amend where plaintiffs stated only that "Should this Court find that the Complaint is insufficient in any way, however, plaintiffs respectfully request leave to amend.").

Regardless, the Court would nevertheless deny Plaintiff's request for leave to amend because it would be futile. Even if a party provides sufficient specificity and notice of the proposed amendments, the Court may still deny leave to amend for "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Thomas*, 832 F.3d at 591 (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). As explained in depth in the Court's analysis, Plaintiff failed to sufficiently allege this Court's subject matter jurisdiction, even in response to Defendants' respective motions to dismiss. The Court concludes the jurisdictional defect cannot be cured through any amendment. Accordingly, the Court **denies** Plaintiff's request for leave to amend her Complaint.

## IV.    Conclusion

The Court finds that subject matter jurisdiction does not lie in this case. Accordingly, the Court **grants** Defendant Clifford Fischer's Rule 12(b)(1) Motion to

Dismiss and **grants** Defendant Judd, Thomas, Smith, & Company, P.C.'s Rule 12(b)(1) Motion to Dismiss. This case is hereby **dismissed without prejudice** in its entirety. The Court **denies** Plaintiff leave to amend her Complaint.

    **SO ORDERED.**

    Signed April 30th, 2021.

_Ed Kinkeade_

ED KINKEADE
UNITED STATES DISTRICT JUDGE